[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11971
Non-Argument Calendar
_____

D.C. Docket No. 3:15-cv-01211-HES-JRK

ERIC MITCHELL,

                                                             Plaintiff-Appellee,

versus

CITY OF JACKSONVILLE, FLORIDA,

                                                             Defendant,

GAIL LOPUT,
individually,
KURT WILSON,
individually,

                                                             Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 10, 2018)

Before JULIE CARNES, EDMONDSON, and FRANK HULL, Circuit Judges.

PER CURIAM:

In this interlocutory appeal, Defendants Chief Gail Loput and Director Kurt Wilson appeal the district court's denial of their motion for summary judgment on Plaintiff Captain Eric Mitchell's claims for race discrimination and retaliation, in violation of 42 U.S.C. §§ 1981 and 1983.  Defendants' motion was based, in pertinent part, on qualified immunity.  No reversible error has been shown; we affirm in part and dismiss in part.

Plaintiff, an African-American male, began his employment with the Jacksonville Fire and Rescue Department ("JFRD") in 2000.  In 2014, Plaintiff accepted a position within the JFRD Training Academy.  Training Academy employees were eligible for a salary increase and were permitted to work a more flexible work schedule than employees of other JFRD divisions.

In August 2015, Chief Loput was appointed the Chief of the Training Academy.  Shortly thereafter, Chief Loput assigned a "liaison" to relay orders to other members of the Training Academy, including to Plaintiff.  As a result, Plaintiff -- who was a Captain and the second-highest ranking officer in the Training Academy next to Chief Loput -- began receiving orders from a lower-

ranking lieutenant, in violation of the JFRD's chain-of-command policy.  When Plaintiff expressed to Chief Loput his concerns about the use of a liaison, Chief Loput told Plaintiff that it was "easier to talk to" the liaison.

Chief Loput also treated Plaintiff differently from his non-minority co-workers.  For example, Chief Loput avoided one-on-one contact with Plaintiff, excluded Plaintiff on an email announcing a department-wide staff meeting, sent Plaintiff on unnecessary errands, and denied Plaintiff's previously-approved travel leave for a leadership training conference.

Plaintiff -- who was the only African-American at the Training Academy -- believed Chief Loput was discriminating against him based on his race.  On 21 August 2015, Plaintiff met with Director Wilson to discuss his concerns.  Director Wilson took no action to address Plaintiff's concerns and, instead, contacted the JFRD's Equal Opportunity and Equal Access Office to request advance warning if Plaintiff filed a complaint.  On 28 August 2015, Plaintiff filed a complaint with the City of Jacksonville's Equal Opportunity/Equal Access Office ("EO/EA"), alleging race discrimination.

Afterwards, Plaintiff contends Chief Loput began to sabotage Plaintiff's work performance -- and ultimately transferred him out of the Training Academy -- in retaliation for his having filed a complaint with the EO/EA.  For instance, Plaintiff was responsible for coordinating training classes for new recruits; two of

Plaintiff's co-workers had volunteered to assist him with this task.  In September 2015, Chief Loput ordered the co-workers not to help Plaintiff and, instead, to "let [Plaintiff] fail."  Chief Loput then ordered the co-workers to register for a conflicting training class -- while also telling them they were not in fact required to attend that class -- so that it would appear on paper that they were unavailable to assist with Plaintiff's training classes.  Chief Loput also instructed the co-workers to communicate with Plaintiff only via email.  In addition, when Plaintiff was not physically present at his desk, Chief Loput's designated liaison asked regularly about Plaintiff's whereabouts; he would point to Plaintiff's empty desk and say "we got to get rid of this one."  On 2 October 2015, Chief Loput -- with Director Wilson's approval -- transferred Plaintiff out of the Training Academy.

Plaintiff filed this civil action, asserting claims against Defendants, in their individual capacity, for race discrimination and retaliation.[1]  Defendants moved for summary judgment arguing, among other things, they were entitled to qualified immunity.  The district court denied Defendants' motion, concluding that genuine disputes of fact precluded summary judgment.

The denial of a motion for summary judgment based on qualified immunity "is an immediately appealable collateral order, provided that it concerns solely the pure legal decision of (1) whether the implicated federal constitutional right was

---

[1] Plaintiff also named the City of Jacksonville as a defendant.  The City is not a party to this interlocutory appeal.

clearly established and (2) whether the alleged acts violated that law" under the "core qualified immunity analysis." Koch v. Rugg, 221 F.3d 1283, 1294-95 (11th Cir. 2000) (emphasis omitted) (citing Johnson v. Jones, 115 S. Ct. 2151, 2156-57 (1995)).  The appeal "must present a legal question concerning a clearly established federal right that can be decided apart from considering sufficiency of the evidence relative to the correctness of the plaintiff's alleged facts." Id. at 1294. We have no jurisdiction if the defendant "challenges only sufficiency of the evidence relative to a predicate factual element of the underlying constitutional tort." Id. at 1296 (quotation omitted).

To the extent Defendants argue they are entitled to qualified immunity on Plaintiff's race discrimination claim because a reasonable official under the circumstances could have believed that Defendants' conduct was lawful, we have jurisdiction to review that legal issue on appeal.  Viewed in the light most favorable to Plaintiff,[2] the record establishes that Plaintiff was treated less favorably than his non-minority co-workers.  Plaintiff has also proffered some evidence that his treatment was racially motivated.  Defendants, on the other hand, contend that a lawful basis existed for utilizing a liaison to communicate with Plaintiff: that it was "easier" for Chief Loput.

---

[2] Because the district court did not identify the facts it relied on in denying Defendants' motion, we conduct our own factual analysis. See Stanley, 219 F.3d at 1287.

That Defendants may have acted, in part, with discriminatory motive does not necessarily defeat their entitlement to qualified immunity. See Foy v. Holston, 94 F.3d 1528, 1534-35 (11th Cir. 1996). When improper motive is part of the underlying constitutional tort -- and where evidence exists of mixed motives -- a defendant is still entitled to qualified immunity if "the record indisputably establishes that the defendant in fact was motivated, at least in part, by lawful considerations." Stanley v. City of Dalton, 219 F.3d 1280, 1296 (11th Cir. 2000) (emphasis in original).

Here, the record does not establish "indisputably" that Defendants' conduct was in fact motivated at least in part by their proffered reason. Instead, evidence in the record demonstrates that the use of a "liaison" to communicate within a single division was atypical and that the use of a lower-ranking "liaison" to relay orders to a higher-ranking officer would violate the JFRD's chain-of-command policy. We also note that Defendants have proffered no legitimate, non-discriminatory reason for the other conduct alleged by Plaintiff: that Chief Loput avoided one-on-one contact with Plaintiff, excluded Plaintiff from a department-wide email, assigned Plaintiff menial tasks, and denied Plaintiff's travel leave. At this stage in the proceedings, the district court concluded properly that Defendants were unentitled to qualified immunity on Plaintiff's claim for race discrimination.

Because Defendants' remaining arguments on appeal attack the sufficiency of the evidence supporting Plaintiff's substantive claims for race discrimination and retaliation -- and are not pertinent to the core qualified immunity analysis -- we lack jurisdiction to consider them in this interlocutory appeal.  See Koch, 221 F.3d at 1296; Stanley, 219 F.3d at 1286-87.[3]

AFFIRMED IN PART; DISMISSED IN PART.

---

[3] About Plaintiff's race discrimination claim, Defendants contend that Plaintiff (1) failed to show that he suffered an adverse employment action; (2) failed to establish the existence of a similarly-situated employee treated more favorably than he was; (3) failed to show that Defendants' proffered reason for utilizing a liaison was false; and (4) had no evidence of race discrimination other than his own hunch.  About Plaintiff's retaliation claim, Defendants argue that Plaintiff (1) failed to show that he had an objectively reasonable belief that he suffered race discrimination; (2) failed to show that he suffered an adverse employment action; and (3) failed to show that Defendants' proffered reason was false or that retaliation was the true reason for his transfer.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

May 10, 2018

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 17-11971-GG
Case Style: Eric Mitchell v. Gail Loput, et al
District Court Docket No: 3:15-cv-01211-HES-JRK

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1.

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against appellants.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Joe Caruso, GG at (404) 335-6177.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs