UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ERIC MITCHELL,

      **Plaintiff,**

vs.                                                            Case No.:   3:15-cv-01211-HES-JRK

CITY OF JACKSONVILLE, FLORIDA;
GAIL LOPUT, individually; and
KURT WILSON, individually;

      **Defendants.**

## PLAINTIFF'S TRIAL BRIEF

Plaintiff, Eric Mitchell, by and through undersigned counsel, pursuant to this Court's case management and Scheduling Order (Doc. 18) files this trial brief in this cause. The dispositive issues in this cause have been litigated extensively both in this Court and the Eleventh Circuit, which lay out in greater detail Plaintiff's legal arguments on these issues.

**I.**     **Mitchell's Discrimination Claims**

    **A.**     **Prima Facie Case**

To state a *prima facie* case for racial discrimination, Griffin Mitchell must show that "(1) [he] was a member of a protected class, (2) [he]was subject to adverse employment action, (3) [his] employer treated similarly situated employees who are not members of a protected class more favorably, and (4) [he] was qualified to do the job." *Santillana v. Florida State Court System,* 450 Fed. Appx. 840, 843 (11th Cir. 2012) (citing *Burke-Fowler v. Orange Cty.,* 447 F.3d 1319, 1323 (11th Cir. 2006)). It is undisputed that Mitchell is a member of a protected class.

        1.     <u>Adverse Employment Action</u>

"Adverse employment action does not refer only to ultimate employment decisions, such as the decision to discharge an employee." *Shannon v. Bellsouth Telecommunications, Inc.*, 292 F.3d 712, 716 (11th Cir. 2002). Employer conduct falling short of an ultimate employment decision may still be cognizable if it reaches some threshold level of substantiality. *Id.* Even where an employer stops short of firing or demoting an employee, the "total weight" of the employer's conduct may rise to the level of adverse employment action. *Id.* at 716.

Plaintiff will introduce testimony that the cumulative acts of the Defendants prior to Mitchell's transfer. Even though Mitchell was the second-highest ranking employee at the Training Academy, he was required to report to a lower-ranking, white lieutenant, who kept track of his work assignments and whereabouts. Mitchell was forced to perform menial assignments, while he was passed over for training opportunities and previous assignments, which were given to lower-ranking employees or recent arrivals at the training academy.

Even if these acts were not sufficient to constitute an adverse action, Mitchell's transfer similarly deprived him of substantial employment benefits. *Hinson v. Clinch Cnty*, 321 F.3d 821, 828 (11th Cir. 2000) ("A transfer can be adverse if it involves a serious and material reduction in pay, prestige, or responsibility."); *McCabe v. Sharett*, 12 F.3d 1558, 1654 (11th Cir. 1994) (readily concluding that a transfer to a less desirable job that resulted in fewer opportunities for salary increases, less responsibility, and more menial tasks constituted an averse employment action).

2. <u>Treatment of similarly situated employees</u>

Job rank or title is not dispositive to determining whether two employees are similarly situated. *Lathem v. Department of Children and Youth Services*, 172 F.3d 786, 793 (11th Cir. 1999). Furthermore, a plaintiff is not required to present comparator if he is able to present a

"mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision-maker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1327 (11th Cir. 2011).

In the instant case, Mitchell's comparators are the white employees at the training academy who did not receive the adverse treatment that Mitchell received. While Mitchell anticipates that Defendants will place great emphasis on the fact that Lt. Jesse Brown gave orders to others at the academy, the others at the training academy were not supervised by Brown like Mitchell was, nor were they subject to the other actions that Mitchell described above, such as shutting them out of meetings, assigning menial tasks, or passing them over for prestigious positions.

3. <u>Mitchell's Qualifications</u>

Mitchell intends to offer the testimony of the prior division chief of the Training Academy Jill McElwee to establish this element of his prima facie case. She will state that not only was Mitchell qualified for the position, but he had been put in charge of one of the Training Academy's most difficult assignments and was considered a strong performer in his prior work there.

**B.** **Pretext**

The Eleventh Circuit has held that deviation from established policies or practice can demonstrate pretext. See *Bass v. Bd. of Cnty Com'rs Orange County, Fla.*, 256 F.3d 1095, 1108 (11th Cir. 2001). In *Bass*, the Eleventh Circuit found that the plaintiff had created a triable issue of fact as to pretext by presenting evidence that a fire department Training Academy violated interview procedures when hiring instructors. *Id*; *See also, Hulbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006) (holding that where company usually issued

separation letter within one or two days, 12-day delay was sufficient to create triable issue as to whether performance-based justifications for termination were pretextual).

While the Defendants' arguments about Brown's experience might be believable in a different setting, they are controverted by Mitchell's evidence that—outside a few, well-defined exceptions—JFRD is a para-military organization where rank takes primacy above other qualifications. Both former division chiefs will testify that they were unaware of any instances of lower-ranking personnel relaying orders to higher-ranking officers. (Doc. 39-5, "McElwee Depo," at 29–30; Doc. 39-22 at 193). Lt. Sneed and Treadwell have also testified that they had never witnessed a liaison used in the way Brown was used. (Doc. 39-12, "Treadwell Depo," at 45; Doc. 39-13, "Sneed Depo," at 56). Further, the Defendants' explanation does little to explain the other adverse actions taken against Mitchell, such as Loput's assertion that Tracy Davis would be used as a back-up liaison, the cancellation of Mitchell's travel-leave for training, appointment of a newly-arrived officer to represent that training academy at FSCJ, and Loput's refusal to meet with Mitchell. For this reason, there is a triable issue as to whether the conduct that occurred prior to Mitchell's transfer was based on his race.

## II.     Mitchell's Retaliation Claims

### A.     Prima Facie Case

To establish a claim of retaliation, a plaintiff "must first establish a prima facie case by showing that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) he established a causal link between the protected activity and adverse action." *Bryant v. Jones*, 575 F.3d 1281, 1307-08 (11th Cir. 2009).

1.     <u>Protected activity</u>

A Plaintiff engages in "statutorily protected activity" when he or she protests an employer's conduct which is actually lawful, so long as he or she demonstrates "a god faith, reasonable belief that the employer was engaged in unlawful employment practices." *Little v. United Technologies, Carrier Transciold Division*, 103 F.3d 956, 960 (11th Cir. 1997). For the reasons discussed above, Chief Loput's treatment of Mitchell was unlawful, and therefore this element is satisfied.

However, even if the elements of a discrimination claim were not met, Mitchell will still show that his belief that he was discriminated against was reasonable. The testimony at trial will show that shortly after Chief Loput assumed control of the training academy, its only other black employee was transferred. At this time, Mitchell was asked to receive orders from a lower-ranking white, lieutenant—a practice unheard of within JFRD's strict chain of command structure. Before filing his complaint, Mitchell attempted to address these concerns with both Loput and Wilson, but he never received an explanation for their decisions other than that the white employees were "easier to talk to" than Mitchell. Under these facts, it was reasonable for Mitchell to believe that he was the victim of discrimination, even if there were other (undisclosed) motivations for the Defendants' conduct.

  2. <u>Adverse Employment Action</u>

This element is discussed in greater detail in Mitchell's prior claim. However, it is worth noting that in retaliation claims the standard for an adverse employment action is arguably less stringent, since a Plaintiff need only show that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fey Ry. Co.*, 584 U.S. 53 (2006).

  3. <u>Causation</u>

Close temporal proximity of a month to six weeks between protected conduct and adverse action is enough to meet the elements of a prima facie retaliation case. *Cf. Dunnelon v. Fruehauf Corp.*, 794 F.2d 598, 601-602 (11th Cir. 1986). Here, Mitchell was transferred a little over a month after filing his complaint. Even before that time, Loput had made efforts to oust him from the academy by relaying instructions to staff to "let him fail."

### B. Pretext

"In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000). If a Plaintiff presents evidence to rebut a proffered reason for his discharge, that evidence may create triable issues regarding other "closely intertwined" reasons by making them appear "fishy and suspicious as well."

The proffered justifications of the Defendants have related one way or another to Mitchell's performance at the training academy and the impending recruit class that was set to arrive in October. However, Mitchell will put on testimony of training academy witnesses who will state that Lt. Jessie Brown and Gail Loput took them aside and told them to "let Mitchell fail" and falsify training academy documents to make it appear that they would be too busy to assist Mitchell with an "all hands-on deck" assignment. This testimony casts into serious doubt both the explanations the Defendants have proffered for Mitchell's transfer as well as any others they may proffer relating to his performance at the training academy.

## III. Qualified Immunity

The standard for determining whether a right is clearly established for purposes of qualified immunity is whether the right violated is one "about which a reasonable person would have known." *Goebert v. Lee County*, 510 F.3d 1312, 1330 (11th Cir. 2007). Further,

"[G]eneral statements of law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." *Hope v. Pelzer*, 536 730, 741 (2002). An official can still be on notice that their conduct violates established law even in novel factual circumstances. *Id.* Indeed, the Court has expressly rejected a requirement that previous cases be "fundamentally similar" or "materially similar" to the facts at issue defeat qualified immunity. *See United States v. Lanier*, 520 U.S. 259, 270–271 (1997).

The Defendants have already taken and lost an interlocutory appeal on the issue of qualified immunity. Mitchell intends to present the same evidence which comprised the record on which that appeal was decided.

Respectfully submitted,

\_\_\_\_\_*/s/ Jesse Wilkison*_____
Wm. J. Sheppard, Esquire
Florida Bar No.: 109154
Elizabeth L. White, Esquire
Florida Bar No.: 314560
Matthew R. Kachergus, Esquire
Florida Bar No.: 503282
Bryan E. DeMaggio, Esquire
Florida Bar No.: 055712
Jesse B. Wilkison, Esquire
Florida Bar No.: 118505
Sheppard, White, Kachergus & DeMaggio, P.A.
215 Washington Street
Jacksonville, Florida 32202
Telephone:    (904) 356-9661
Facsimile:    (904) 356-9667
Email:        sheplaw@sheppardwhite.com
COUNSEL FOR PLAINTIFF

# CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished to the following by the CM/ECF system, this 21st Day of September, 2018:

> **Derrel Q. Chatmon, Esquire**
> **Sonya H. Hoener, Esquire**
> **Sean Granat, Esquire**
> **Jon Phillips, Esquire**
> **Office of General Counsel**
> **117 West Duval Street**
> **Suite 480,**
> **Jacksonville, Florida 32202**

_____/s/ Jesse Wilkison_____
ATTORNEY